# IN THE COURT OF APPEALS OF IOWA

No. 18-1079
Filed August 15, 2018

**IN THE INTEREST OF X.M.,**
**Minor Child,**

**D.R., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jonathan Willier, Centerville, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Debra A. George of Griffing & George Law Firm, PLC, Centerville, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

The mother appeals the district court's termination of her parental rights to her son, X.M. She argues the State did not prove X.M. could not be safely returned to her custody, the State did not make reasonable efforts to return X.M. to her custody, and termination is not in X.M.'s best interest. We agree with the district court and affirm.

## I. Background Facts and Proceedings

The family came to the attention of the Iowa Department of Human Services (DHS) on or around December 11, 2015, upon reports the mother was using methamphetamine. At the time, the mother lived with her eventual-husband[1] and her four children—X.M. and three girls.[2] The mother and her eventual-husband refused drug testing and denied using drugs, and the DHS noticed no behavioral indicators of drug use. However, the DHS developed concerns about supervision, food, and shelter during the initial meeting. The DHS began offering services to the family on January 7, 2016, including parenting skills and mental-health services. X.M. has been diagnosed with attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), and moderate intellectual disability.

During DHS visits, staff noted the house was in disarray with broken glass and an uncovered hole in the floor. Various inappropriate items were spread throughout the house within reach of the children, including a hammer X.M. had

---

[1] The mother married her husband on February 23, 2016.
[2] X.M. was born in 2009. The three girls were born in 2002, 2007, and 2012. The girls born in 2002 and 2007 have the same biological father, X.M. has a different biological father, and the girl born in 2012 has a different biological father. The mother's husband is not the biological father of any of the children.

used to break glass and other objects. On multiple occasions, the children left the house without the mother's knowledge and without proper winter clothing, sometimes requiring law enforcement officials to locate and return the children. X.M. went to school several times with feces on his clothes. On or around February 1, 2016, X.M. started a fire in the family home, causing extensive damage and forcing the family to temporarily live in a motel. During one home visit, X.M. climbed on top of a refrigerator and sprayed a cleaning product on his head; DHS staff moved him and cleaned him while the mother remained seated nearby.

On March 28, 2016, the children were picked up after having wandered unsupervised around a park for several hours. The children were sunburned, X.M. had scratches on his arms and face, and they said they had had nothing to eat or drink that day. The DHS then removed the children from the mother's care. X.M. was placed in a foster home separate from his siblings. He transitioned to a second foster family after his first foster family determined they could not meet his special needs. At the time of the hearing, X.M. remained in his second foster home where his behavior and development had improved.

The mother's husband has a prior conviction for sexually abusing his biological daughter from a previous marriage. The juvenile court initially prohibited him from contacting these children, but DHS staff believed the mother allowed him to continue having contact with the children. The order was eventually lifted and he began to participate in supervised visits. On July 14, 2017, an altercation between the mother and her husband resulted in charges of domestic abuse assault against the husband. Soon after, the mother acknowledged her husband had assaulted her multiple times over the prior several months. A no-contact order

soon followed barring the husband from contacting the family, and the DHS ended visits with the husband. The mother and the husband eventually resumed living together in violation of the order. On November 28, the husband was ultimately sentenced on a reduced charge of disorderly conduct. The no-contact order was cancelled on January 30, 2018. At the time of the termination hearing, the mother and her husband had not participated in couples counseling despite a DHS recommendation to do so.

In the months prior to termination, the mother was allowed semi-supervised visits with the children every other Saturday. She cancelled about half of the visits. She testified most of the cancellations were due to illness resulting from her "nerves." She acknowledged the DHS cancelled one visit because she failed to timely confirm the visit.

On February 11, 2016, X.M. was adjudicated a child in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2) and (n) (2016). On January 11, 2018, the State petitioned to have the parental rights of the mother and the biological father to X.M. terminated.[3] The matter was heard on March 1 and April 12.[4] On June 8, the district court terminated the parental rights of the mother and

---

[3] X.M.'s biological father did not respond to notice or otherwise participate in the termination proceeding.

[4] The March 1, 2018 hearing involved the termination of parental rights to all four children. Prior to the April 12 hearing, the State and the parents agreed to additional time for reunification regarding the three girls, with the possible goal of placing the girls with their respective biological fathers. As a result, the April 12 hearing involved the termination of parental rights to only X.M. Following the April 12 hearing, the court entered permanency orders for the three girls providing up to six additional months for reunification to occur.

biological father[5] under Iowa Code section 232.116(1)(f) (2018).  The mother now appeals.

## II.     Standard of Review

We review termination proceedings de novo, giving weight to but not being bound by the district court's factual findings.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  "There must be clear and convincing evidence of the grounds for termination of parental rights."  *Id.*  Our primary consideration is the best interests of the child.  *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).

## III.    Statutory Grounds

Under section 232.116(1)(f), the court may terminate parental rights if it finds all of the following:

> (1)  The child is four years of age or older.
> (2)   The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)  The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4)  There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

It is undisputed X.M. was four years of age or older, was adjudicated CINA, and had been removed from the physical custody of his parents for at least twelve of the previous eighteen months.  Iowa Code § 232.116(1)(f)(1)–(3).  The remaining question is whether X.M. could be returned to the mother's care at the time of the termination hearing.  *Id.* § 232.116(1)(f)(4); *see In re A.M.*, 843 N.W.2d 100, 111

---

[5] The district court also terminated the biological father's parental rights under Iowa Code section 232.116(1)(e).  He does not appeal.

(Iowa 2014) (indicating the statutory language "at the present time" refers to the termination hearing).

X.M. requires heightened supervision due to his special needs. Without adequate supervision, X.M. engages in behavior that risks destruction of property and harm to himself and others. The DHS removed X.M. after he left the home for several hours accompanied only by his minor half-sisters. The mother's actions since X.M.'s removal show she is still incapable of providing the supervision he needs, even if he were the only one of the four children to be returned home. We therefore find clear and convincing evidence to support termination of the mother's parental rights to X.M. under section 232.116(1)(f).

In order to prove the child cannot be safely returned to the parents, the State must also show it made "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(9); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The mother argues the DHS did not make reasonable efforts to provide her with services. However, it is the parent's responsibility to demand other, different, or additional services in order to preserve error. *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). The DHS offered numerous services to the mother, and she never challenged the reasonableness of the services or requested any other specific services prior to the termination hearing. Therefore, the mother has not preserved her claim regarding the reasonableness of the services offered. *See id.*

The mother also argues the DHS unreasonably delayed returning the children to the home due to the presence of her husband. The DHS was initially cautious with her husband due to his criminal history of sexually abusing his own

daughter. The husband violated no-contact orders from both the juvenile court and the district court following his criminal charges. Even though the mother described months of physical abuse from him, the mother and husband continue to live together and they have declined couples counseling to address their issues. Despite the husband's presence, the DHS remained in contact with the mother and offered her services to strengthen her parenting skills and to be able to safely supervise her children. The mother was inconsistent in taking advantage of these opportunities. We find the DHS made reasonable efforts to return the children to the home regardless of any issues the husband presented.

### IV. Best Interests of the Child and Parent–Child Relationship

When a statutory ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). If the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory considerations set forth in section 232.116(3) should serve to preclude termination. *See id.* at 41.

The mother argues termination is not in X.M.'s best interests because termination will likely end his contact with his half-sisters. The mother notes X.M. is bonded with his half-sisters and her parental rights to the girls had not been terminated at the time of X.M.'s termination. However, X.M. had already been placed in a foster home separate from his half-sisters with limited visitation for almost two years at the time of termination. The State further delayed termination of the mother's parental rights to the girls in order to explore placement with their biological fathers; the State was not considering a recommendation of returning

the girls to the mother. Even if the girls are ultimately placed with their fathers, the record reveals the mother will likely have limited visitation with them. Accordingly, X.M.'s bond with his half-sisters has already been largely severed, and he will likely have little or no opportunity to re-establish that bond in the mother's care.

The mother also argues termination is not in X.M.'s best interests because his special needs make him difficult to adopt. She notes one foster family has already ceased providing care for X.M. for this reason. As explained above, the mother has shown she cannot provide the supervision he needs. While DHS staff acknowledged his special needs present challenges to adoption, they consistently testified he is adoptable and that his behavior and development have greatly improved outside of his mother's care. Therefore, termination of the mother's parental rights to X.M. is in his best interests despite concerns about adoption and severing his bond with his half-sisters.

The mother also argues her bond with X.M. should preclude termination. This argument is more appropriately made under the permissive factors of subsection (3). *See* Iowa Code § 232.116(3)(c) (stating the "court need not terminate the relationship between the parent and the child" if it finds "the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). While X.M. is bonded with the mother, she is not able to provide the supervision he needs. He interacts well with DHS staff, and he has thrived in his current foster home. We therefore find the bond between X.M. and his mother does not preclude termination.

**V. Conclusion**

The district court properly terminated the mother's parental rights under paragraph (f) because she is unable to provide the supervision he needs. Termination is in X.M.'s best interests, and no factors preclude termination. Therefore, we affirm.

**AFFIRMED.**